## CHARLES L. COLBURN, ET AL *vs.* FRANK NEUFARTH.

*Misfeasance and malfeasance defined—Proof required to convict.*

Misfeasance is a default in an officer in not doing a lawful act in a proper manner, omitting to do it as it should be done.

Where it was the duty of an officer, as a member of a public board, to approve any lawful bills, and in the performance of that duty he should approve a bill which, by the exercise of ordinary care and diligence, he would have discovered when presented, not to be a proper bill, he would be guilty of misfeasance in office.

Malfeasance is the doing of an act wholly unlawful and wrongful.

Where it was the duty of an officer to approve any lawful bills, and in the performance of that duty he should approve a bill which he knew to be fraudulent, he would be guilty of malfeasance in office.

To convict one of malfeasance the jury must be satisfied beyond a reasonable doubt of the guilt of the accused ; to convict of misfeasance, by a preponderance of evidence.

*Decided April* 21, 1886.

CHARGE to the jury.

*W. M. Bateman* for complainants.
*Theodore Horstman* and *H. A. Morrill, contra.*

GOEBEL, J.

*Gentlemen:*—Charles L. Colburn, *et al,* filed their complaint in this court, alleging that they are electors of this county, and that one Frank Neufarth was, at the April election, 1885, held in the city of Cincinnati, duly elected a Director of the Board of the City Infirmary; that said Neufarth, on the 15th of April, 1885, entered upon his duty as such director, and is now, and has ever since been, acting as such; that said Neufarth has assumed and is bound to perform the duties of said office, with his co-directors, in the management of the infirmary of the city, and is in control of its expenses, with authority, as provided by law and the ordinances of said city, to manage its affairs, to take care of its inmates, erect, enlarge and repair its buildings, and additions thereto, and provide for the furnishing thereof, taking care of the grounds connected therewith, and with authority to grant outdoor relief

to the poor.   And he further alleges that the said Neufarth has not faithfully and honestly performed his duties and administered the trust confided to him; but on the other hand, has been guilty of both misfeasance and malfeasance in his office, and makes twelve specific charges against Neufarth, of which I shall speak hereafter.

This proceeding is under Section 1732 of the Revised Statutes, which provides in substance that if complaint, under oath, be filed with the Probate Judge of the county in which the corporation, or a large part thereof, is situated, by an elector of the corporation, signed and approved by four other electors thereof, charging that any member of any board, or officer of the corporation, has been guilty of misfeasance or malfeasance in office, a citation shall issue to such party charged in the complaint; and if, upon such hearing, such officer shall be found guilty of misfeasance or malfeasance in office, either by the judge or the jury (if one be demanded), he shall be removed from office.

It is admitted that Charles L. Colburn, the complainant, and John Poland, E. P. Sheppard, J. H. Beattie, and Chris. A. Adams, who approved the complaint, are electors of this county.   It is also admitted that Frank Neufarth was duly elected and qualified as a member of the Board of Directors of the City Infirmary; that he entered upon the dis-

Colburn *v.* Neufarth.

charge of his duty as such director, and that he is still acting as such; that he had the management, with his co-directors, of the infirmary of the city, and was in the control of its expenses, taking care of its inmates, the erection, enlargement and improvement of its buildings, of its grounds, and of its authority to grant outdoor relief to the poor.

Before proceeding to dwell upon the twelve charges contained in the complaint, it is proper for me to explain the statutory grounds upon which a conviction may be had. It will be seen that the statute requires, before a conviction can be had, that the accused must be either guilty of misfeasance or malfeasance in office, and it is proper for me to define what is misfeasance and malfeasance.

Misfeasance may be defined to be a default in an officer, in not doing a lawful act in a proper manner, omitting to do it as it should be done ; in other words, it was the duty of Frank Neufarth, as a member of this board, to approve any lawful bills. If in the performance of that duty, he should approve a bill which, by the exercise of ordinary care and diligence, he would have discovered, as presented, not to be a proper bill, then he would, while in the performance of the lawful act, have failed to do it in a lawful manner, and by approving it, he would be guilty of misfeasance in office.

Malfeasance is the doing of an act wholly unlawful and wrongful; and let me make that a little more definite. It was the duty of Neufarth to approve any lawful bill, and if a bill was presented to him, which bill he knew to be fraudulent, either in the amount of the work, if such bill purported to be for work, or in the prices charged, the approval of that bill was wholly wrongful and unlawful, and he would be guilty of malfeasance in office.

The first charge, in substance is, that Frank Neufarth, as such director, has permitted a wasteful and dishonest administration of the affairs of the infirmary by its superintendent and the associate members of the board of directors, in the purchase of materials needed by the infirmary and the employment of labor at extravagant prices, in excess of their fair value and the usual and customary rates at which they could have been purchased and employed; and has authorized and permitted the purchase, for consumption in said institution, of large amounts of material unsuited and unnecessary to its use, such as whiskey and other descriptions of liquors and luxuries inappropriate for such institution, and which no charity would require the tax-payers and the city of Cincinnati to furnish for the maintenance of its poor. I charge you, that the superintendent of this institution was under the control of the board of directors;

Colburn v. Neufarth.

they are responsible for his acts in the management of the institution in so far as they approve them. If the superintendent, in the management of the institution, purchased materials and employed labor at extravagant prices, and that fact was known to the directors, who acquiesced in it by the approval of such bills, and of bills presented for such material and labor, they are in no better position than if they had themselves contracted for such labor and material. This institution contained many old and feeble persons. It was proper, under medical advice, to prescribe and give to such inmates whiskey and stimulants of that kind ; and it was proper to expend a reasonable and just amount for that purpose. It was improper to purchase for consumption whiskey and liquors of other description in excess of what would be necessary and at a price that would be reasonable and just to pay for such liquors. In the management of an institution of this kind, being a charitable institution, depending for its support on the bounty of the tax-payers of this city, all that could be reasonably expected in the upholding of this institution, was to give to these inmates shelter, proper clothing, wholesome food, and such other things as may have been reasonably necessary to maintain health and life. And I charge you, that before you can find a verdict of guilty on this charge, which would be malfeasance in office, you must first be satisfied,

by a preponderance of the evidence, that such materials, supplies and luxuries, were purchased unnecessarily and for extravagant prices ; and that there was an unlawful use of whiskey and other liquors in the institution, and that Frank Neufarth approved of the same.

Secondly, That Frank Neufarth approved such bills, either by the signing of the vouchers, or permitted such use of said liquor, and permitted the employment of labor at extravagant prices.

The first complaint further charges that Neufarth, either actually knowing the bills to be excessive and fraudulent, or wilfully failing to examine into the matter, joined with his associates in the directory, in the approval and payment of bills for the purchase of such materials and supplies and luxuries, and the employment of labor at the excessive prices. As I have already defined what is misfeasance and malfeasance, it is sufficient for me to say, that if you find that Neufarth knew these bills to be excessive and fraudulent, and approved them, he was guilty of misfeasance ; or if he wilfully failed to examine into such bills, having reason to believe that they were fraudulent, he was guilty of malfeasance. And if you so find, you must return a verdict of guilty.

The second charge is, that he, as a director, wrongfully purchased, and approved of the purchase of large quantities of liquors, for use at the infirmary

during the time that he has been a director, amount-
ing to the very large sum of nearly $1,800, at
extravagant and excessive prices, the same being
wholly unnecessary for the use of said institution;
and on the other hand, calculated to injure its officers,
servants and inmates. The charge is, to some
extent, included in the first charge, and leaves but
little for me to say. If you find, from the testimony,
that he did wrongfully purchase or approve of the
purchase of unnecessary quantities of liquor, at prices
far above the market price, or that the excessive use
of it demoralized the officers, servants and inmates
of the institution, he is guilty of misfeasance in office.
But I charge you, before you can return a verdict of
guilty on this charge, you must be satisfied, by a
preponderance of the evidence, that such purchases
were unnecessary; that the excessive use of it did
demoralize the officers, servants and inmates, or
either of them; otherwise your verdict must be
" not guilty."

The third charge alleges, that said Neufarth has
acquired and held an interest in contracts of purchases
and employment by said board executed in behalf of
the city, for the purchase of materials and perform-
ance of labor, for the use of said infirmary, during
his term of office, in violation of the statute, and in
fraud of the rights and interests of the city, the de-
tails and conditions of which the complainant can

not more particularly state and allege. There was no evidence offered to sustain this charge, and I instruct you to return a verdict of "not guilty" on this charge.

The fourth charge alleges that the Board of Infirmary Directors, on or about the first day of July, 1885, entered into a contract with one John Haders, an overseer of the poor, in the service of said infirmary board, and an officer of the city of Cincinnati, then in the service of the city, for papering the office of the said infirmary board in the city of Cincinnati, in violation of the statutes of the state of Ohio, and in violation of the duties of said infirmary board, which contract was approved by the said Neufarth. The complainant says, that afterwards, for the purpose of concealing from the records of said board said violation of law, a bill for said work was then made out in the name of one George Haders, approved by defendant Neufarth, and upon the warrant of said directors paid out of the treasury of the city. That said bill was grossly excessive in amount, fraudulent, and intended to cover money to be taken from the treasury of the city for the use and benefit of said board of directors, of the fraudulent character of which the said Neufarth had knowledge. I charge you, that it was unlawful for the board of directors to enter into a contract with John Haders, if John Haders was an officer of the board or city.

If you find from the testimony, that John Haders was an overseer of the poor, such contract made with him would come under the provisions of the statute. But, before you can find the defendant, Frank Neufarth guilty, you must be satisfied beyond a reasonable doubt that Frank Neufarth had knowledge of such contract. If, on the other hand, you should find he had no knowledge of such contract, your next inquiry will be, was the bill rendered to the board for such services a reasonable one.? If you are satisfied that it was, then you must return a verdict of " not guilty." If you should find, however, that the bill rendered was grossly excessive in its amount, and therefore fraudulent, of which Frank Neufarth had full knowledge, then he is guilty of malfeasance, and you must so find. Before you can convict him of malfeasance, as charged in this charge, you must be satisfied, beyond a reasonable doubt, that Frank Neufarth had knowledge of the fraudulent character of the contract, or of the bill, and that he approved of the same.

Fifth charge—" Complainant says, that during the winter of 1884 and 1885, and in the spring and summer of the year 1885, Michael Hauck, the owner of a small tinning establishment in the city of Cincinnati, was employed by said board of directors to do some repairing, as it is claimed, upon the roof of the infirmary building at Hartwell; and that during

that time, he rendered divers and sundry bills professedly for the labor and materials furnished in making said repairs, amounting in the aggregate to the sum of $6,007.05. That said bills were submitted to and approved by all of said directors, including said Neufarth, and warrants issued for the same, beginning on the fifth day of May, 1885, and ending on the 31st day of July, 1885; but complainant says, that said bills were false and fraudulent, being for an amount eight or ten times as large as that to which the said Hauck was reasonably entitled for said work and material, and were made, and intended, and were approved, for the purpose of covering large sums of money to be drawn from the treasury of the city of Cincinnati, in fraud of the city and its taxpayers, for which no equivalent in labor and material had been rendered. That said Neufarth, either actually knowing the same to be excessive and fraudulent, or having full knowledge of the circumstances and consideration of such bills, and wilfully failing to examine into the matter, joined in approving and ordering said bills paid." You must first find, and I so charge you, that Hauck presented bills between the fifth day of May, 1885, and July 31, 1885. If you so find, did he do such work for which bills were rendered? If he did, was the amount charged reasonable or otherwise? If you find Hauck presented bills during this period of time, for work

Colburn *v.* Neufarth.

never done, or the price of work done was far in excess of its actual value, then such bills for work never done were fraudulent, and bills for work done at excessive prices to the extent of such excess were fraudulent.

Your next inquiry will then be, did Frank Neufarth have knowledge of such fraud? If you find from the evidence that he had knowledge of the fraudulent character of such bills, or if he had not such knowledge, but failed to examine into such bills, having reason to believe them to be fraudulent, he is guilty of malfeasance in office, and in determining the question of his guilt on this charge you should consider all the facts and circumstances connected with the transaction, and if these in your opinion, clearly point to fraud on the part of Neufarth, and there is no reasonable doubt of his guilt in your mind, then you must find him guilty on this charge.

Sixth charge—" Complainant says, that James M. Cronin, a resident of the town of Newport, in the state of Kentucky, was during the years of 1884 and 1885, employed by the board of directors of said infirmary to erect some fences, and to do some jobbing and carpentering, in and about the grounds of said infirmary building ; and that, in pursuance of said contract, he performed said work, the fair value of which did not exceed $3,300. But complainant says, that instead of rendering bills for such fair and

reasonable value of said work, he, under the direction of the said board of directors, with the intent to cheat and defraud the city of Cincinnati, rendered bills, from time to time, in a large measure fictitious and grossly excessive, for an amount in the aggregate of about $17,250 ; which said bills were presented to and approved by said board of directors, and warrants issued for the payment thereof. That a large portion of said bills were approved by the said Neufarth, with knowledge of the grossly excessive and fraudulent character thereof." Now, if you find from the evidence this to be true, that he had knowledge of such fraud, then he is guilty of malfeasance ; and I can only repeat what I have said in the previous charge, that you may consider any collateral facts, in which he bore a part, for the purpose of establishing such guilty knowledge. But you must be satisfied before you can return a verdict of guilty on the charge of malfeasance contained in this count, beyond a reasonable doubt, that Frank Neufarth had knowledge of such fraud, or not having such knowledge, wilfully failed to examine into the matter, having reason to believe that such bills were fraudulent.

Seventh charge—"Complainant further says, that during the year 1884, said board of directors purchased of S. Schott & Co., a large amount of Brussels carpeting, to be delivered and put down, for which the said Schott & Co., rendered a bill, dated

August 29, 1885, for the sum of $669.20, which
said bill was approved by all said directors, including
Neufarth, and a warrant issued therefor. But com-
plainant says that said bill was excessive and fraudu-
lent ; that a portion of said carpeting was never de-
livered to the said infirmary ; but, if delivered at all,
it was delivered elswhere, to the houses or homes of
the directors or other persons, as complainant believes,
for their private use, under the direction of one or
more of the directors of said infirmary. That the
prices for said work and material were extravagant
and excessive ; that the original bill for said carpet-
ing, according to the prices charged by said Schott
& Co., amounted to $451.65. But that the same
was ordered to be changed by said directors, so as to
include a large additional sum, being the difference
between said true bill and the amount of the bill as
rendered, designed for the use of the said directors.
That of the fraudulent character of the bill aforesaid,
the said Neufarth had knowledge."

It will be seen from the evidence that this bill was
contracted for prior to the time that Frank Neufarth
came into office. With the contracting of this bill, he did
not, or could not have had anything to do. The bill was,
however, presented to the board after he came into
office, for the sum of $669.20, which is not disputed.

Before you can return a verdict of guilty on this
charge, you must be satisfied that the bill was exces-

sive, and that the same was approved by Frank Neufarth, knowing such bill to be excessive. To the extent of such excess above a fair and reasonable amount it was fraudulent. Before you can return a verdict of guilty, you must be satisfied, beyond a reasonable doubt, that Frank Neufarth had knowledge of such fraud, or not having knowledge, wilfully failed to inform himself, having reason to believe that the bill was excessive.

Eighth charge—"Complainant says, that at the time said Neufarth entered upon the office of director of said city infirmary, he was in partnership with one McDonald in the business of plumbing and gas-fitting, at No. 107 East Pearl street, in the city of Cincinnati, and that said partnership is still in existence and carrying on business at the same place. But the complainants say, that the said Neufarth and his co-directors have entered into contracts with the said partner of Neufarth, for furnishing work and material in plumbing and gas-fitting at the infirmary from time to time since said Neufarth has been in office as director ; but that in order to conceal the interest of the said Neufarth in said contracts, he fraudulently caused bill-heads to be struck off in the name of Joseph E. McDonald, his partner, and bills for the work and material furnished upon said bill-heads, under such contracts, were rendered to the board of directors to the amount of \$201.66 ; which

amount complainant alleges to be an unreasonable and excessive charge for the work and material actually furnished ; in all of which proceedings by the board of directors the said Neufarth participated, and of which he had knowledge, in violation of the laws of Ohio."

I charge you that Frank Neufarth, as a director of the infirmary board, is an officer of Cincinnati. As such officer, it was unlawful to enter into any contract with any person, if by such contract he participated in the profits thereof. As a member of such board, he was not disqualified from being a partner, or having any interest in any business or contract, not connected with the board of which he was a member. He had a right to carry on any lawful business with any person that he saw fit. Before you can return a verdict of guilty on this charge, you must be satisfied beyond a reasonable doubt that at the time that Joseph E. McDonald entered into a contract with said board, Frank Neufarth was a partner of Joseph E. McDonald and that he had an interest in such contract. If you so find, then he was guilty of malfeasance in office, and you must return a verdict of guilty after having satisfied yourselves beyond a reasonable doubt of his guilt. If, upon the other hand, you should find that Frank Neufarth, at that time, was not a partner of Joseph E. McDonald, or if a partner, did not participate or have any interest in this contract, your verdict must

be "not guilty" on this charge. Your inquiry will stop there, for however excessive the bill may have been, not having been approved, although presented, no harm was done to the city.

Ninth charge — "Complainant further says, that during the years 1884 and 1885, one John Heffling, the keeper of a saloon on the turnpike near the infirmary, furnished, with the approval of the board of directors, to the infirmary, for the use of its servants and inmates, quantities of whiskey, wine, beer and cigars, in boxes, bottles and demijohns, and on the 29th of April, 1885, the bills therefor were presented to the board of directors, of which the said Neufarth was one, and were by them approved and ordered to be paid, and on that day a warrant therefor was issued, signed by the said Brockman, Herrmann and Neufarth, for the amount thereof, being $157.40; which warrant is described in the account as being on account of provisions, medicines and farm. But complainant says that said articles were unnecessary for the use of said infirmary, and that the defendant well knew that their purchase was not authorized by law, and that it was a misapplication of the funds of the infirmary for hurtful and unlawful purposes to pay for them." It is admitted that John Heffling presented this bill and that it was described in the account, or voucher, as being on account of provisions, medicines and farm; when, in fact, it was, in

part, for whiskey, beer and cigars. I charge you that it was improper to purchase such articles when the same were unnecessary for the use of the inmates of the infirmary; and if Frank Neufarth, as such director, had knowledge of their improper purchase and use, and approved the bill, then he was guilty of misfeasance in office; and you must return a verdict of "guilty." On this charge it is not necessary that you must be satisfied beyond a reasonable doubt, but by a fair preponderance of the evidence, that Frank Neufarth had knowledge of the improper purchase and use of these articles. If the voucher was a proper one, then it made no difference under what head the clerk designated the articles for which the voucher was issued. But if it was an improper voucher, then the fact that he designated the articles as he did, may be a circumstance, and may be considered by you in determining his guilt.

Tenth charge—No evidence having been offered on this charge, I instruct you to return a verdict of "not guilty."

Eleventh charge—"Complainant further says that defendant has been grossly and wilfully negligent and derelict in the performance of his duties, as to the examination of accounts and doing what his office and the law required that he should do in aiding and assisting in the economical and proper

administration of the affairs of said infirmary, and in protecting the city of Cincinnati from misappropriation of the funds provided for its support. That he has permitted the purchase of groceries and provisions for the infirmary for prices largely in excess of their market value and of the wholesale rates at which they could have been purchased; that some of them were made for the use of the officers and servants of the institution, and for the unlawful entertainment of personal guests. That Frank Neufarth well knew these facts, and that he made no objection or effort to protect the interests of the city."

I charge you that a public office is a trust, and the law imposes upon a person who assumes a public office, that in the management and in the discharge of his duties he must exercise care and prudence, not necessarily of the highest degree, such as a very vigilant and extremely careful person would exercise; but such care as good faith, exact justice and public policy may require; and the public has the right to expect of such officer, that he will exercise ordinary care and prudence in the trust committed to him. An officer cannot sit by and permit a fraud to be perpetrated without objection, knowing it to be a fraud, or wilfully fail to inform himself, if he had reason to believe from the circumstances surrounding him at the time that a fraud was being committed. He is

bound by the acts of his associates only so far as his acts aided and assisted, or as by his conduct he acquiesced in the fraud. His objection need not be in any particular form; but he must in some way make manifest his objection, so that there can be no doubt of his disapproval. It is not necessary where fraud is alleged, to prove a participation in the spoils of such fraud by the party charged with the fraud in a proceeding of this kind; but such fraud, when proven against an officer, would be malfeasance; nor would it make any difference that after a fraudulent bill was presented and approved and a voucher issued therefor, it was not paid In such case everything was done by the party in the furtherance of the fraud that he could do, and the failure to get the money or any part thereof, was no fault of his, if such officer is charged with the duty of approving bills and issuing vouchers.

It was the duty of Frank Neufarth to assist and aid in the economical and proper administration of his trust; in the discharge of that duty he was bound to purchase the necessary provisions at the wholesale rate in the market. It was unlawful to misapply the funds of this institution for any other purpose than the one for which it was intended. The entertainment of guests at the cost and expense of the institution was illegal and unlawful, and a misappropriation of its funds.

I charge you that if you find from the evidence that Frank Neufarth wilfully neglected to do his duty, omitting to do it as it should have been done, by purchasing goods far in excess of their market value, or purchasing articles unnecessary for the use of such institution, or not objecting to the purchase of such articles by the other directors, or permitting such unlawful entertainments, knowing the facts and making no effort to prevent them, or wilfully refusing to inform himself, he is guilty of misfeasance in office, and you must so find.

In determining the question as to whether he "wilfully" omitted to do his duty, you may consider any circumstance or fact connected with any transaction involved in this charge, which would satisfy your mind that he had knowledge of their character.

The twelfth and last charge in substance is that Frank Neufarth, as a director, contracted for supplies and work after the funds had been exhausted, and when there was no money in the treasury to the credit of the infirmary board, and approved bills and issued warrants therefor contrary to law.

Some years ago the legislature passed two acts which are commonly known as the Worthington and Burns laws, which provided in substance that a warrant issued for money by an officer having the control of such money, unless there was money set apart to meet such expenditure, was void, and the penalty

for violating the law by an officer is that he shall be disqualified from holding any office of trust or profit in the city ; and if the person be in office, he shall be dismissed.

I charge you that it was unlawful to issue any warrants for any purpose by this board, unless there was at the time money in the treasury to cover such expenditure. But if you find from the evidence that in order to maintain this institution in providing for the inmates food, clothing, shelter and other things necessary to maintain health and life, warrants were issued to cover such expenditures, while it was a violation of the law, you cannot convict Frank Neufarth for his participation in the issuing of such vouchers or in the purchase of such articles. The law will not permit an officer to suffer for a violation of a statute, when under certain circumstances it became necessary to violate it in the discharge of his duties. The necessity of the case and good faith must be apparent.

If, upon the other hand, you should find from the evidence, that a necessity did not exist, or that contracts were made not necessary under the circumstances to which I have referred, and Frank Neufarth signed such warrants and approved such contracts, knowing at the time that there was no money in the treasury, or if he did not know it, failed to inform himself when he had reason to believe

*Colburn v. Neufarth.*

that the fact existed, he is guilty of malfeasance in office and you must so find. But before you can return a verdict of malfeasance on this charge, you must be satisfied beyond a reasonable doubt from the evidence, of his guilt.

I have charged you specifically upon the twelve charges, and I desire to instruct you upon the subject of proof.

In criminal cases, and in such civil cases where the fraud alleged involves a crime, the presumption of innocence exists in favor of the accused, and the jury must be satisfied in such cases beyond a reasonable doubt from the evidence, of his guilt, and so I charge you that before you can return a verdict of guilty on any of the charges where such charge involves fraud or want of good faith, or known or continual violation of law, which I have heretofore defined to be malfeasance, you must be satisfied beyond a reasonable doubt, from the evidence, of his guilt. The law is too humane to demand a conviction while a rational doubt remains in the mind of the jury; but when, after a fair and full consideration of the evidence, it has produced a conviction and satisfied your mind to a reasonable certainty of his guilt, you must say so. If you are not fully satisfied, but find only that there are probabilities of guilt, your only safe course is to acquit.

But this rule does not apply to any of the charges

where fraud or want of good faith, or a known or intentional violation of law is not involved. In such charges alleging only acts of misfeasance in office as before defined, the rule is that you must be satisfied by a preponderance of evidence.

Finally, let me say that you have listened to the testimony of the witnesses and the arguments of counsel during the many days of this trial with a patience that I commend in the highest degree. You have heard the instructions of the court, and when you retire to deliberate on your verdict, be swayed neither by considerations personal to the defendant nor by the demands of public clamor; but remember your oaths to try the defendant according to the law and the evidence , and if you will adopt that as your guide, you will have discharged your whole duty to the defendant, to society, and your own conscienee.

NOTE.—The jury returned a verdict of guilty, and after judgment confirming it, the defendant was removed from office. The judgment was reversed in the Common Pleas on the ground that the court below erred in its charge as to the proof required to convict on the charge of misfeasance in office.